UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| TERESA SHOBNEY, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | EP-17-CV-00234-DCG |
| JEFF B. SESSIONS, *Attorney General,* | § | |
| U.S. DEPARTMENT OF JUSTICE, and | § | |
| FEDERAL BUREAU OF | § | |
| INVESTIGATIONS, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Jeff B Sessions's ("Defendant") "Motion to Dismiss" (ECF No. 12) ("Motion"). For the reasons that follow, the Court grants the Motion.

### I. BACKGROUND

Plaintiff Teresa Shobney ("Plaintiff") is a female and, at the relevant time, was over 40 years of age. Compl. ¶ 17, ECF No. 1. She worked as an auditor with the Federal Bureau of Investigations ("FBI") at the agency's El Paso Division. *Id.* ¶ 11; *see also* Mot. at 2 (implying that Plaintiff's employment with the FBI continues to this day), ECF No. 12. In July 2017, Plaintiff brought this action against Defendant, asserting claims of sex and age discrimination, claims of hostile work environment based on sex and age, and claim of retaliation—in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*

Defendant filed the instant Motion on February 23, 2018. Plaintiff filed a "Response to Defendant's Motion to Dismiss and Memorandum of Law in Support" (ECF No. 15) ("Response") on March 16, 2018, and Defendant followed by filing a "Reply in Support of

Motion to Dismiss" (ECF No. 16) ("Reply") on March 23, 2018.

## II. STANDARD

Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But the court does not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)).

A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Id.*; *Iqbal*, 556 U.S. at 678. "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

As an initial matter, Defendant points out that Plaintiff advances new allegations in her Response to the Motion that are not in her Complaint. Reply at 5. The Court declines to consider them here. *See e.g., Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. . . . Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint." (citations omitted); 2 *Moore's Federal Practice*, § 12.34[2] (3d. Ed. 2018)) (In ruling on a motion to dismiss Rule 12(b)(6) motion to dismiss the court "may not . . . take into account additional facts asserted in a memorandum opposing the motion, because such memoranda do not constitute pleadings under Rule 7(a).").

By his Motion, Defendant challenges the sufficiency of Plaintiff's pleading as to all of her asserted claims, *i.e.*, discrimination, retaliation, and hostile work environment claims, and asks for their dismissal. Mot. at 1–2. Below, the Court addresses each claim in turn.[1]

### A. Discrimination claims

Title VII prohibits an employer from discriminating against any individual "with respect to h[er] compensation, terms, conditions, or privileges of employment," "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits similar discrimination "because of such individual's age." 29 U.S.C. § 623(a)(1). Where an employment discrimination plaintiff's claims rely on circumstantial (as opposed to direct) evidence of

---

[1] Defendant, in a single sentence, asserts that Plaintiff's claims are time-barred because she failed to initiate contact with an EEO counselor within the prescribed time. Mot. at 1. Defendant however makes no argument in support of that assertion, and therefore, the Court declines to address it here.

discrimination, such evidence is evaluated under the *McDonnell Douglas*[2] burden-shifting framework. Pursuant to that framework, the plaintiff must first establish a prima facie case of discrimination by showing that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Cntr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (internal quotation marks and citation omitted); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (applying the *McDonnell Douglas* framework to ADEA claims).

The plaintiff, however, need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). Nevertheless, the plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make h[er] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added). "In that inquiry, it can be helpful to reference the *McDonnell Douglas* framework." *Id.*

Defendant argues that Plaintiff's Complaint fails to allege sufficient facts to support her conclusory allegations that she was subjected to an adverse employment action. *See* Mot. at 5. The Court of Appeals for the Fifth Circuit continues to hold that with respect to discrimination claims, adverse employment actions include only "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503–04 (5th Cir. 2014). "An employment action that does not affect job

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

duties, compensation, or benefits is not an adverse employment action." *Id.* (internal quotation marks, brackets, and citation omitted).

Here, Plaintiff alleges that between January 2011 and May 2012, her supervisor Eliasib Ortiz yelled at her on four occasions, and Ortiz downgraded her performance appraisal score for 2011 as compared to her score for 2010. Compl. ¶¶ 17, 21. However, neither of these actions constitutes an ultimate employment action. *Washington v. Veneman*, 109 F. App'x 685, 689 (5th Cir. 2004) (*per curiam*) (stating that rude behavior from supervisors and undeserved poor performance ratings do not constitute ultimate employment actions under the Fifth Circuit's jurisprudence).

Plaintiff further alleges that in February 2012, Mark Morgan, Plaintiff's second-line supervisor "removed her audit authority,"[3] *id.* ¶ 27; *see also* Resp. to Mot. at 12 ("This completely cut Ms. Shobney out of the audit picture and authority in the eyes of the division employees."), and in early 2012, Ortiz delayed by two months the processing of the paper-works for her automatic promotion to grade GS-12, which she ultimately received on May 31, 2012, *id.* ¶¶ 17, 35. Even assuming, *arguendo*, that these actions constituted adverse employment actions, "the 'ultimate question' in a Title VII disparate treatment claim remains 'whether a defendant took the adverse employment action against a plaintiff *because* of her protected status.'" *Raj*, 714 F.3d at 331 (emphasis in original) (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)). Plaintiff fails to plead sufficient facts to make a plausible claim that her supervisors took these actions *because* of her sex or age.

In sum, the Court concludes that Plaintiff's Complaint fails to state a claim for gender or

---

[3] Specifically, the Complaint alleges that in February 2012, Morgan devised a plan to improve her image at work and as part of that plan, got the audit personnel at the FBI Head Quarters involved with her audit findings. *See* Compl. ¶ 27; Resp. to Mot. at 6. Apparently, other employees had issues with her audit findings. *See id.* ¶ 20; Resp. to Mot. at 11.

age discrimination.

## B. Retaliation Claim

Defendant also challenges Plaintiff's retaliation claim on the ground that the Complaint fails to allege any adverse action. Mot. at 1, 12. Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee because she has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3. To make a prima facie case[4] of retaliation under the *McDonnell Douglas* burden-shifting framework, Plaintiff must show that (1) she participated in protected activity, (2) she suffered adverse employment action, and (3) a causal connection exists between her protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).

The definition of an adverse employment action in the retaliation context is broader than in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is "less demanding" than an "ultimate employment decision"). It requires an adverse action that is "materially adverse" to a reasonable employee, which means that the employer's action is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "'[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Id.* at 945–46 (quoting *White*, 548 U.S. at 69).

---

[4] As with the discrimination claims, Plaintiff need not make out a prima facie case of retaliation discrimination in order to survive the Rule 12(b)(6) motion to dismiss, but she must plead sufficient facts on all of "the ultimate elements" of a retaliation claim to make her case plausible. *See Raj*, 714 F.3d at 331; *Chhim*, 836 F.3d at 470.

Plaintiff alleges that on November 6, 2013, she filed a formal complaint with the EEO, alleging retaliation. Compl. ¶¶ 9, 12. Previously, she filed another complaint with the EEO (she does not state its filing date), wherein she alleged discrimination based on, *inter alia*, sex and age. *Id.* In the context of the EEO investigation on the earlier complaint, Morgan provided a sworn statement to an EEO investigator on June 10, 2013, expressing his views on the EEO process and stating that he would leave it to others to determine whether Plaintiff violated certain provisions of the FBI's standards of conduct. *Id.* ¶¶ 12–15.

Defendant points out, and Plaintiff does not dispute, that her retaliation claim rest solely on Morgan's statement to the EEO, given in the context of the EEO investigation. Mot. at 12–13; Resp. at 19–20. Plaintiff argues that Morgan's statement constitutes an adverse action because it has a chilling effect on her with sole purpose to dissuade her from making or supporting a charge of discrimination. *See* Resp. at 20. Plaintiff fails to cite any authority to support her proposition that a statement given by an employer to the EEO in the context of an EEO investigation, in and of itself, constitutes an adverse action for purposes of Title VII's antiretaliation provision. Consequently, the Court concludes that Plaintiff's Complaint fails to state a legally cognizable claim that is plausible. *See Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (On a Rule 12(b)(6) motion, a court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." (*en banc*) (citation and quotation marks omitted)). Accordingly, the Court grants Defendant's motion on this ground and dismisses Plaintiff's retaliation claim.

## C. Hostile Work Environment Claims

Plaintiff alleges that she was subjected to a hostile work environment based on her sex (female) and age. Compl. ¶ 17. The creation of a hostile work environment is a proscribed form

of discrimination under Title VII and the ADEA. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). A hostile work environment is one that "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. To state a hostile work environment claim under Title VII and the ADEA, the plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic—here, Plaintiff's sex (female) and age of over 40; (4) the harassment affected a term, condition, or privilege of employment; and in cases where harasser is a co-worker, (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *Watts v. Kroger Co.*, 170 F.3d 505, 509 & n.3 (5th Cir. 1999); *Dediol*, 655 F.3d at 441.

To ensure that Title VII or, by extension, the ADEA, *Dediol.*, 655 F.3d at 441, does not become a "general civility code," only "extreme" conduct will be found sufficiently severe or pervasive: "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788–89 (1998) (citations and quotation marks omitted). The complained-of conduct must be both objectively and subjectively offensive. *WC&M Enters., Inc.*, 496 F.3d at 399. To determine whether the conduct was objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* This totality-of-the-circumstances inquiry relies on "common sense and an

appropriate sensitivity to social context." *Henry v. CorpCar Servs. Houston, Ltd.*, 625 F. App'x 607, 611 (5th Cir. 2015) (*per curiam*) (brackets omitted) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998)).

Here, Plaintiff's hostile work environment claims are based on certain incidents that took place between January 31, 2011 and May 31, 2012. Compl. ¶ 17. During this period, on several occasions, Ortiz (Plaintiff's first-line supervisor) screamed and yelled at her in front of co-workers. *Id.* ¶ 18, 20, 23, 35. Several times, Ortiz called her "coward" and "bully." *Id.* ¶ 18, 35. On one occasion, he told her that "[e]verybody in the El Paso Division hates you[]," and that "[g]o ahead and go talk to [Morgan (Plaintiff's second-line supervisor)] because I don't care, I am not your supervisor anymore." *Id.* ¶¶ 25–26. In response to a co-worker's complaint about Plaintiff's audit findings (specifically, that Plaintiff "lied" about a financial transaction involving the sale of snacks), Ortiz "threatened" to downgrade her performance appraisal score for 2011, "if he received more complaints about her from coworkers"; ultimately, for 2011, she received a score of 3.78 as opposed 4.22 for 2010. *Id.* ¶ 21. In February 2012, Morgan devised a plan to improve her image at work and as part of that plan, got the audit personnel at the FBI Head Quarters involved with her audit findings. *See* Compl. ¶ 27. In 2012, Ortiz delayed by two months the processing of the paper-works for her automatic promotion, which she ultimately received on May 31, 2012. *Id.* ¶¶ 17, 35.

Taken as true, these allegations fail to plausibly support a hostile work environment claim, in part because they fail to contain an implicit or explicit "nexus" or "connection" between the alleged conduct and Plaintiff's protected characteristic—*i.e.*, her sex (female) or age. *See Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (*per curiam*) (The plaintiff must show "a nexus" between the alleged conduct and "her race or gender."); *Ellis*

*v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (*per curiam*) (finding that the plaintiff's allegations did not sufficiently state a hostile work environment claim because they "do not contain any connection, either explicit or implicit, between her membership in a protected class and the alleged activity"); *see also Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) ("Sex-neutral hostile conduct cannot be used to support a hostile environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status.").

At most, the allegations plausibly suggest that Ortiz is rude and has a bad temper, and further that the alleged hostility was the result of a personal conflict between Plaintiff and Ortiz (or her co-workers)—but not the result of gender or age based animus.[5] "If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts." *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994); *see also Dixon v. Henderson*, 186 F. App'x 426, 428 (5th Cir. 2006) (*per curiam*) (affirming lower court's denial of plaintiff's hostile work environment claim, because the "alleged mistreatment was caused by a personality conflict with his supervisor, not animus based upon race or gender"); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 n.4 (5th Cir. 2012) ("'Slights . . . that often take place at work and that all employees experience, personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers are not actionable' under Title VII." (brackets and ellipses omitted) (quoting *White*, 548 U.S. at 68)); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) ("It is a simple fact

---

[5] *See* Compl. ¶ 24 (alleging "Ortiz'[s] outburst"); *id.* ¶ 25 (alleging "[d]uring this outburst Ortiz, several times called her . . ."); *id.* ¶ 18 (alleging "coworkers had acted in a hostile manner towards her, creating a hostile work environment"); *id.* ¶ 22 (alleging "Plaintiff experienced a conflict with Administrative Specialist (AS) Maria T. Castillo regarding . . .").

that in a workplace, some workers will not get along with one another, and this [c]ourt will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense."); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) ("Discourtesy or rudeness[] . . . will not amount to discriminatory changes in 'terms and conditions of employment.'"); *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII" (brackets, quotation marks, and citations omitted); *Sanchez v. Gen. Growth Mgmt. Co.*, 136 F.3d 1328, 1998 WL 44520, at *1 (5th Cir. 1998) (unpublished) (holding evidence that the plaintiff "had been verbally attacked, belittled and nick-picked by his supervisors . . . does reflect considerable unpleasantness between [him] and his supervisors, but it does not add up to . . . a hostile work environment actionable under Title VII" (brackets and quotation marks omitted); *Gonzalez v. Geren*, No. 3:07-CV-242-KC, 2009 WL 522935, at *13 (W.D. Tex. Jan. 12, 2009) (holding "[a] supervisor's bad temper and abrasive personality towards an insubordinate employee, particularly one with a long record of personality conflicts with past supervisors, do not" constitute actionable harassment under Title VII). Consequently, Plaintiff's Complaint fails to state a claim for hostile work environment based on sex or age.

## D. Leave to Amend the Complaint

"[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000); *see also Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it

is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). Therefore, out of an abundance of caution, the Court *sua sponte* grants Plaintiff leave to amend her Complaint as to all, but one, claims and thereby affords her an opportunity to cure the pleading deficiencies discussed *supra*; this leave does not extend to Plaintiff's retaliation claim, which is dismissed.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's "Motion to Dismiss" (ECF No. 12) is **GRANTED**. Specifically, it is **GRANTED, WITHOUT LEAVE TO AMEND**, as to Plaintiff's retaliation claim and **GRANTED, WITH LEAVE TO AMEND**, as to Plaintiff's all other claims.

**IT IS FURTHER ORDERED** that Plaintiff shall have **twenty-one (21) days** from the date of this Order to file an amended complaint to cure the pleading deficiencies as to all of her claims, except for her retaliation claim. **FAILURE TO DO SO** will result in **DISMISSAL** of these claims without further notice.

**IT IS FINALLY ORDERED** that the Department of Justice and the Federal Bureau of Investigations are **TERMINATED** from this case.[6]

So ORDERED and SIGNED this 23rd day of April 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

---

[6] Defendant argues, and Plaintiff concedes, that the FBI and the Department of Justice are not proper defendants. Mot a 13; Resp. at 2.